# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| SS Body Armor I, Inc., *et al.*, | ) Bankr. Case No. 10-11255 (CSS) |
|  | ) |
| Debtors. | ) Jointly Administered |
| ———————————————— | ) |
|  | ) |
| D. David Cohen, | ) Civ. No. 15-00633 (SLR) |
|     Appellant, | ) |
|  | ) |
|     v. | ) |
|  | ) |
| SS Body Armor I, Inc., | ) |
|     Appellee. | ) |
| ———————————————— | ) |
|  | ) |
| D. David Cohen, | ) Civ. No. 15-01154 (SLR) |
|     Appellant, | ) |
|  | ) |
|     v. | ) |
|  | ) |
| SS Body Armor I, Inc., | ) |
|     Appellee. | ) |
| ———————————————— | ) |

## APPENDIX TO ANSWERING BRIEF OF SS BODY ARMOR I, INC.

Dated: August 29, 2016

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
James E. O'Neill (Bar No. 4042)
Elissa A. Wagner (CA Bar No. 213589)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone:  (302) 652-4100
Email:  ljones@pszjlaw.com
       akornfeld@pszjlaw.com
       joneill@pszjlaw.com
       ewagner@pszjlaw.com

Counsel for Appellee SS Body Armor I, Inc.

# TABLE OF CONTENTS

Brief for Intervenor-Appellant D. David Cohen, *Cohen v. Huston, et al.*, Case No. 15-2940 [2d Cir. D.I. 31] ......................................................B-1

*Cohen v. Huston, et al.*, 2016 WL 4059543 (2d Cir. July 29, 2016)..................B-47

Debtors' Response to Supplemental Statement of D. David Cohen in Response to Debtors' Letter Concerning Court Approval in Derivative Action [Bankr. D.I. 3090] ..................................................................................B-49

Excerpts of Transcript of Hearing Held Before the Bankruptcy Court on July 6, 2015 ........................................................................................................B-55

Excerpts of Transcript of Hearing Held Before the Bankruptcy Court on November 10, 2015..........................................................................................B-66

Dated:  August 29, 2016            PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
James E. O'Neill (Bar No. 4042)
Elissa A. Wagner (CA Bar No. 213589)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
        akornfeld@pszjlaw.com
        joneill@pszjlaw.com
        ewagner@pszjlaw.com

Counsel for Appellee SS Body Armor I, Inc.

# 15-2940-cv

## United States Court of Appeals

*for the*

## Second Circuit

In Re: DHB INDUSTRIES INC. DERIVATIVE LITIGATION

D. DAVID COHEN,

*Intervenor-Appellant*,

THOMAS HUSTON, DERIVATIVELY ON BEHALF OF DHB INDUSTRIES, INC., BRIAN ABRAMS, ALVIN VIRAY, CLASS ACTION PLAINTIFFS,

*Plaintiffs*,

—against—

DHB INDUSTRIES INC., NOMINAL DEFENDANT, A DELAWARE CORPORATION,

*Defendant-Appellee*,

DAVID H. BROOKS, SANDRA L. HATFIELD, DAWN M. SCHLEGEL, JEROME KRANTZ, GARY NADELMAN, CARY CHASIN, BARRY BERKMAN, LARRY ELLIS, DAVID BROOKS INTERNATIONAL, INC., TERRY BROOKS, ELIZABETH BROOKS INDUSTRIES, INC., ANDREW BROOKS INDUSTRIES, INC., JEFFREY BROOKS, TACTICAL ARMOR PRODUCTS, LEAD PLAINTIFFS IN THE CLASS ACTION LITIGATION, WEISER, LLP,

*Defendants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

### BRIEF AND SPECIAL APPENDIX
### FOR INTERVENOR-APPELLANT

CARTER LEDYARD & MILBURN LLP
TWO WALL STREET
NEW YORK, NEW YORK 10005
212-732-3200
*Counsel for Intervenor-Appellant D. David Cohen*

B-1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

BACKGROUND .............................................................................3

JURISDICTIONAL STATEMENT ........................................................6

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..........................7

STANDARD OF REVIEW ................................................................7

STATEMENT OF THE CASE AND SUMMARY OF ARGUMENT ..................8

FACTS ......................................................................................12

  A.  Background ............................................................................12

  B.  Section 304 of the Sarbanes-Oxley Act...........................................13

  C.  2006 Stipulation of Settlement ....................................................15

  D.  Cohen's 2008 Appeal and Preservation of the SOX 304 Claim ..................16

  E.  The Turnover Proceeding ...........................................................19

  F.  Certain Parties to Stipulation of Settlement Execute the Current Settlement in 2015 ..............................................................................20

  G.  The Company Reveals Plan to Ignore the Terms of its Own Agreement and Forego Approval in the Derivative Action ........................................22

  H.  Approval of the Current Settlement in the Bankruptcy Court ....................23

  I.  Bankruptcy Court Hearing on Fee Issues.........................................24

ARGUMENT ...............................................................................26

THE ORDER DISMISSING THE DERIVATIVE ACTION WITH PREJUDICE MUST BE VACATED ....................................................................26

  A.  The District Court's Dismissal Violated this Court's Mandate to Reexamine the Fee Issues..........................................................................28

    i.  This Court's Mandate Expressly Required the District Court to Reexamine the Fee Issues in the Context of the Current Settlement......28

    ii.  The District Court's Basis for Dismissal Was Contrary to Law.............31

      a.  The District Court Maintained Jurisdiction to Adjudicate the Claims in the Derivative Action.....................................................32

B-2

      b.    The District Court Had Jurisdiction to Adjudicate – and in Fact Did Adjudicate – the Claims in Derivative Action, And Thus It Had Jurisdiction to Adjudicate the Fee Issues ..............................34

  B.  Dismissal With Prejudice Was Improper Because the Current Settlement Itself Required Approval in the Derivative Action ......................................35

  C.  Dismissal Prejudiced Cohen's Rights to Be Heard on the Fee Issues in the District Court ................................................................................................36

  D.  On Remand, Reassignment to a New District Court Judge is Warranted.....38

CONCLUSION ......................................................................................................40

B-3

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Bah v. Mukasey,*
   529 F.3d 99 (2d Cir. 2008) ...............................................................7

*Bell Atl. Corp. v. Bolger,*
   2 F.3d 1304 (3d Cir. 1993) ................................................................2

*Calderon v. Astrue,*
   683 F.Supp. 2d 273 (E.D.N.Y. 2010) ........................................29, 33

*Catanzano v. Wing,*
   277 F.3d 99 (2d Cir. 2001) ..............................................................36

*Chase Manhattan Bank, N.A. v. Celotex Corp.,*
   56 F.3d 343 (2d Cir. 1995) ..............................................................34

*Cohen v. Viray,*
   622 F.3d 188 (2d Cir. 2010) .....................................................passim

*Detroit v. Grinnell,*
   495 F.2d 448 (2d Cir. 1974) ............................................................37

*Eubank v. Pella Corp.,*
   753 F.3d 718 (7th Cir. 2014) .............................................................3

*Goldberger v. Integrated Res., Inc.,*
   209 F.3d 43 (2d Cir. 2000) ..............................................................37

*In re Brateman Bros., Inc.,*
   135 B.R. 853 (Bankr. N.D. Ind. 1991) ............................................32

*In re Greenwood Supply Co.,*
   295 B.R. 787 (Bankr. D. S.C. 2002)................................................32

*In re Ivan F. Boesky Sec. Litig.,*
   957 F.2d 65 (2d Cir. 1992) ......................................................passim

*In re Trans Union Corp. Privacy Litig.,*
   629 F.3d 741 (7th Cir. 2011) .............................................................3

B-4

*Jewelers Vigilance Comm., Inc. v. Vitale Inc.*,
No. 90 Civ. 1476 (MJL), 1997 WL 582823 (S.D.N.Y. Sept. 19, 1997) ............34

*Kerman v. City of New York*,
374 F.3d 93 (2d Cir. 2004) ...................................................................29

*Litman v. Massachusetts Mut. Life Ins. Co.*,
825 F.2d 1506 (11th Cir. 1987) ..............................................29, 31, 34

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986) ...................................................................34

*Network Pub. Corp. v. Shapiro*,
895 F.2d 97 (2d Cir. 1990) ......................................................................7

*Ostrer v. United States*,
584 F.2d 594 (2d Cir. 1978) .................................................................28

*Pescatore v. Pan American World Airways, Inc.*,
97 F.3d 1 (2d Cir. 1996) .......................................................................38

*Slotkin, by Slotkin v. Citizens Cas. Co. of New York*,
698 F.2d 154 (2d Cir. 1983) ..........................................28, 30, 31, 35

*U.S. ex rel. Little v. Shell Expl., Prod. Co.*,
602 F. App'x 959 (5th Cir. 2015) ........................................................39

*United States v. Londono*,
100 F.3d 236 (2d Cir. 1996) ................................................................39

*United States v. Peguero*,
367 F. App'x 170 (2d Cir. 2010) .........................................................39

*White v. Auerbach*,
500 F.2d 822 (2d Cir. 1974) ........................................................1, 2, 37

**STATUTES AND RULES**

11 U.S.C. § 362 (2015) .........................................................................32

15 U.S.C. § 7243 (2015) ..............................................................passim

28 U.S.C. § 1291 (2015) ..........................................................................7

B-5

28 U.S.C. §1332 (2015) ..................................................................6

28 U.S.C. § 1367 (2015) ................................................................6

28 U.S.C. § 1404 (2015) ..............................................................31

28 U.S.C. § 2106 (2015) ..............................................................28

FEDERAL RULE OF APPELLATE PROCEDURE 40 ......................................31

FEDERAL RULE OF APPELLATE PROCEDURE 41 ......................................28

FEDERAL RULE OF BANKRUPTCY PROCEDURE 9027 .................................32

FEDERAL RULE OF CIVIL PROCEDURE 41 ............................................26

**OTHER AUTHORITIES**

Allison List, *The Lax Enforcement Of Section 304 Of Sarbanes-Oxley: Why Is The SEC Ignoring Its Greatest Asset In The Fight Against Corporate Misconduct?*, 70 OHIO ST. L.J. 195 (2009) ........................................18

16AA Fed. Prac. & Proc. Juris. § 3987 (4th ed.) ...................................29

Mark Hamblett, Circuit Rejects Pact's 'End-Run' Around Liability for Ex-Executives, NEW YORK LAW JOURNAL, Oct. 1, 2010 ........................................18

Melissa Maleske, *Executives Can't Negotiate Away SOX Clawbacks*, INSIDE COUNSEL (Jan. 1, 2011) ...................................................18

Mike Cherney, *2nd Circ. Throws Out DHB Shareholder Settlement*, LAW360 (Sept. 30, 2010) ...................................................18

Rachael E. Schwartz, *The Clawback Provision Of Sarbanes-Oxley: An Underutilized Incentive To Keep The Corporate House Clean*, 64 BUS. LAW. 1 (2008) ...................................................18

B-6

# INTRODUCTION

Appellant D. David Cohen ("Cohen") submits this brief in support of his appeal of the August 18, 2015 Order of the Honorable Joanna Seybert of the Eastern District of New York dismissing with prejudice the underlying derivative action without addressing the issues expressly remanded to the District Court pursuant to this Court's mandate in *Cohen v. Viray*, 622 F.3d 188 (2d Cir. 2010). The District Court's disregard of this Court's mandate was improper, prejudicial to Cohen, and must be reversed.

Five years ago, Cohen's appeal overturned a settlement that violated public policy and undermined the enforcement of the securities laws. In ruling in Cohen's favor, this Court recognized that Cohen's appeal raised "novel issues of law" that were vital to maintaining the "integrity of the financial markets." *Cohen*, 622 F.3d at 193, 195. As a result of Cohen's appeal, the public company was relieved of the obligation to indemnify its former CEO, David H. Brooks ("Brooks") – who was subsequently convicted of securities fraud and is now serving a 17 year prison sentence – of his $186 million liability under Section 304 of the Sarbanes-Oxley Act ("SOX 304"), 15 U.S.C. § 7243. For Cohen's effort, pursued at significant personal expense and in the face of long odds and staunch opposition, Cohen was entitled to compensation for his fees and expenses in accordance with long-established precedent in this Circuit. *See, e.g., White v.*

B-7

*Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974) (objectors to derivative settlement "are entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts"). Instead, the District Court (whose approval of the original settlement had been overturned based on Cohen's appeal) refused to entertain Cohen's fee application, contrary to this Court's clear mandate that Cohen's fee claim would need to be addressed by the District Court in the context of a revised settlement. *Cohen,* 622 F.3d at 196.

As a result of the District Court's abdication of its responsibility, Cohen and his law firm have received nothing for their meritorious objection and successful appeal on important issues of first impression, while the parties and law firms who lost the appeal and defended the illegal indemnification of Brooks have been awarded over $13.5 million in fees, including the retention of nearly $10 million in fees prematurely advanced in 2008. If this blatant injustice is allowed to stand, no shareholder in the future will invest the resources and take the risk to challenge collusive settlements that undermine the public interest as well as the interests of the public company. This would contravene of the policy of this Court and of other Circuit Courts encouraging objectors to come forward when they "smell a rat." *See White*, 500 F.2d at 828 (objectors play valuable role in evaluating derivative settlements); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993)

2

**B-8**

(upon settlement, the interests of the plaintiffs and defendants "coalesce," and courts can be left with an incomplete or incorrect understanding of the facts and the law; objectors to derivative settlements play an important role by providing the clash of adversaries necessary to properly evaluate the settlement); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (objectors prevent collusive or unfair settlements by exposing "cozy deals" and otherwise providing information enabling courts to properly assess settlements) (Posner, C. J.); *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (Posner, C. J.) (objectors serve vital role in judicial evaluation of settlements by coming forward when they "smell a rat").

## BACKGROUND

This appeal stems from a second attempt to settle the claims asserted in this action (the "Derivative Action") and a related class action (the "Class Action").[1] The first settlement (the "Stipulation of Settlement") illegally obligated SS Body Armor I, Inc. (the "Company") to indemnify its former CEO Brooks and former CFO Dawn Schlegel ("Schlegel") for liability under SOX 304. Cohen objected to

---

[1] Cohen has filed a related appeal (Second Circuit Case Nos. 15-2932(L), 15-2935) of the District Court's approval of the settlement agreement purporting to resolve the claims in this action and the Class Action (the "Current Settlement"). Because the appeals raise similar facts and legal issues, Cohen intends to move to consolidate the appeals.

B-9

approval of the Stipulation of Settlement based on, among other things, the illegal SOX 304 release and indemnification. After his objections were overruled and the Stipulation of Settlement was approved, Cohen was the only party to prosecute an appeal.

Finding that Cohen raised "novel issues" that "no court has previously addressed," this Court agreed with Cohen, held that the indemnification provision was void as against public policy, and vacated the settlement. *See Cohen*, 622 F.3d at 193, 195-96. In light of the vacatur, this Court did not reach the other issues raised by Cohen on appeal, including (i) Cohen's entitlement to an award of legal fees and expenses based on his meritorious objection, and (ii) the appropriateness of an award of fees to Derivative Counsel who, in collusion with plaintiffs' counsel in the Class Action, bargained away the Company's right to be reimbursed over $186 million under SOX 304 (collectively, the "Fee Issues").[2] Instead, this Court (i) stated that the District Court "will need to reexamine [the Fee Issues], in the context of a revised settlement" and (ii) remanded the case back to the District Court "for proceedings consistent with [its] opinion." *Cohen*, 622 F.3d at 196.

---

[2] Because only the SEC has standing to assert a SOX 304 claim (*see Cohen*, 622 F.3d at 194), private counsel do not benefit from a SOX 304 recovery for the Company and therefore have a perverse incentive to use indemnification as a bargaining chip for a settlement that benefits them.

B-10

On February 6, 2015, the Company, which stepped into the shoes of the derivative plaintiffs to prosecute its claims following its April 2010 bankruptcy filing, entered into the Current Settlement. The execution of the Current Settlement, *i.e.,* a "revised settlement," triggered the District Court's obligation to reexamine the Fee Issues pursuant to this Court's mandate in *Cohen*. It refused to do so based on an alleged lack of jurisdiction, although the terms of the Current Settlement expressly required approval in *both* the Derivative Action and the Class Action before it could become effective.[3] *See* A-57, ¶ 1(b).

Beginning in December 2014, Cohen filed reservations of rights in the Bankruptcy Court stating his intent to litigate the Fee Issues in the Derivative Action when the settlement agreement was presented there for approval. A-198-A-206. The Company did not object or otherwise respond until June 25, 2015 – over six months after Cohen's first filing. A-215-A-220. In a blatant attempt to manipulate the settlement process in order to deny Cohen's right to be heard on the Fee Issues by the District Court (and in violation of the terms of its own settlement), the Company refused to seek approval of the Current Settlement in the Derivative Action. Instead, it moved for a dismissal *with prejudice* arguing that the District Court lacked jurisdiction over the claims asserted in the Derivative

---

[3] The Current Settlement also required Bankruptcy Court approval. A-57, ¶ 1(a).

B-11

Action, including the Fee Issues expressly remanded to the District Court by this Court's decision in *Cohen*.

The District Court granted the motion to dismiss with prejudice, which is tantamount to an adjudication on the merits. The Company argued, and the District Court agreed, that dismissal was appropriate because "the Bankruptcy Court has exclusive jurisdiction of the Derivative Action claims." *See* Docket No. 264, p. 12. There is no doubt, however, that the District Court retained jurisdiction over the Derivative Action following the bankruptcy court filing, and its dismissal *with prejudice* – without addressing the Fee Issues in accordance with this Court's mandate – was improper and must be reversed. The dismissal was also improper because it disregarded the terms of the settlement agreement itself – which expressly required approval of the agreement in the Derivative Action.[4]

The order granting dismissal *with prejudice* of the Derivative Action therefore should be reversed and the case remanded for a proper determination of the Fee Issues.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this action pursuant to 28 U.S.C. §§1332(a)(2) and 1367(a). This Court has appellate jurisdiction over the instant

---

[4] Obviously, the Company could not seek approval of the Current Settlement in the Derivative Action without having the District Court address the Fee Issues remanded by this Court in *Cohen*.

B-12

case pursuant to 28 U.S.C. § 1291 because the appeal was filed from a final order dated August 18, 2015, and entered on August 18, 2015, by the United States District Court for the Eastern District of New York.  SPA-1.  On September 16, 2015, Cohen timely filed his notice of appeal.  A-356.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err in dismissing the action with prejudice without first addressing the issues expressly remanded by this Court in *Cohen v. Viray*, 622 F.3d 188 (2d Cir. 2010)?

2.      Did the District Court have jurisdiction to address the issues remanded by this Court in *Cohen v. Viray*, 622 F.3d 188 (2d Cir. 2010)?

3.      Did the Bankruptcy Court have exclusive jurisdiction over the issues remanded by this Court in *Cohen v. Viray*, 622 F.3d 188 (2d Cir. 2010)?

## STANDARD OF REVIEW

The issues raised on this appeal involve the interpretation of unambiguous contractual provisions, this Court's decision in *Cohen v. Viray*, 622 F.3d 188 (2d Cir. 2010), and the purported "exclusive jurisdiction" of the bankruptcy court to determine issues remanded by this Court.  Accordingly, the proper standard of review for each issue on appeal is *de novo*.  *See, e.g., Network Pub. Corp. v. Shapiro,* 895 F.2d 97, 99 (2d Cir. 1990) ("The interpretation of a contract is generally a question of law and subject to our de novo review"); *Bah v. Mukasey,*

B-13

529 F.3d 99, 110 (2d Cir. 2008) ("We review *de novo* questions of law and application of law to undisputed fact.").

### STATEMENT OF THE CASE AND SUMMARY OF ARGUMENT

In 2006, the parties entered into a Stipulation of Settlement that resolved both the Derivative Action and the Class Action. A-114-A-160. The stipulation provided that it would not become effective unless a final judgment approving the settlement was entered in both the Derivative Action and the Class Action. A-148, ¶ 7.1(e). A key term of the settlement was the release and indemnification of Brooks and former CFO Schlegel for their liability under SOX 304. A-141, ¶ 4.7.

In return for full satisfaction and release of all derivative claims, the Company received no monetary compensation and was required to (i) adopt certain corporate governance boilerplate, and (ii) pay Derivative Counsel $300,000 in legal fees. A-130-137, ¶¶ 2.12, 2.13; A-146-A-147, ¶ 6.5. The Stipulation of Settlement grossly favored Brooks and Schlegel (as beneficiaries of the SOX 304 indemnification) and class counsel (who achieved a monetary settlement for the class in exchange for indemnifying Brooks and were awarded $12 million in legal fees for that effort) at the expense of the Company and its shareholders (who were forced to give up a near certain $186 million recovery from Brooks). A-141, ¶ 4.7; Class Action Docket No. 354.

B-14

As a result of Cohen's successful appeal,[5] this Court vacated approval of the Stipulation of Settlement finding that the SOX 304 indemnification was illegal and against public policy. *Cohen*, 622 F.3d at 193, 195-96. Because there was no longer a settlement, this Court did not reach the Fee Issues. Instead, this Court remanded those issues back to the District Court for reexamination in the context of a revised settlement or the outcome of further litigation. *Id.* at 196.[6]

Four and a half years later, the Company and certain parties entered into the Current Settlement. Like the 2006 Stipulation of Settlement (*see* A-115), the Current Settlement is a single settlement agreement that purports to resolve all claims in both the Derivative Action and the Class Action (*see* A-64, ¶ 6). Unlike the Stipulation of Settlement, many defendants, including Brooks, are not parties to the Current Settlement. And although the 2006 and 2015 agreements have materially different terms, like the Stipulation of Settlement, the Current Settlement unreasonably benefits counsel at the expense of the victims.

The Current Settlement required approval from the Bankruptcy Court and from the District Court in both the Class and Derivative Actions before it could go

---

[5] Because of the importance of the SOX 304 issue raised by Cohen, the Department of Justice and the SEC supported his appeal as *amicus curiae*.

[6] This Court issued its decision several months after receiving notice from the Company of its bankruptcy filing. *See* A-165 (Suggestion of Bankruptcy filed April 19, 2010); A-182 (Judgment and Mandate issued October 28, 2010).

B-15

effective. A-57, ¶ 1. The Company sought and received approval in the Class Action (A-349-A-355),[7] but deliberately refused to move for approval in the Derivative Action, undoubtedly to deprive Cohen of his hearing on the Fee Issues in the District Court. Instead, notwithstanding the plain language in the Current Settlement requiring approval in the Derivative Action, the Company moved for a dismissal with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 41(a)(2). A-47.

Cohen argued below that dismissal was improper in light of this Court's express mandate that the District Court "reexamine" the Fee Issues in the context of the parties' "revised settlement." *See generally* Docket No. 265 (Cohen's Memorandum of Law in Opposition to Motion to Dismiss). Cohen further argued that because the mandate was law of the case, the District Court was obligated to "scrupulously and fully" carry it out and "reexamine those [Fee Issues] . . . in the

---

[7] As noted, Cohen has filed a related appeal from the District Court's order in the Class Action. *See* footnote 1, *supra*. Like the order granting the Company's motion to dismiss with prejudice, the District Court's approval of the Current Settlement in the Class Action was contrary to law. The District Court improperly ruled that the $12 million legal fee award from 2008 was still valid. It also ruled that an additional $1.5 million fee award to class counsel in the bankruptcy proceeding action was "reasonable" even though class bankruptcy counsel did not file a fee application, or submit a single billing summary, invoice, expense report or description of services performed with hours and billing rates. In addition, the District Court approved the settlement absent a properly certified class, and following inadequate notice to affected parties. *See* Class Action Docket No. 439 (Cohen's Memorandum of Law in Opposition to Motion to Approve Settlement).

B-16

context of [the] revised settlement." *See In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992); *Cohen*, 622 F.3d at 196. Cohen observed that a dismissal *with prejudice* is an adjudication on the merits so there did not appear to be a jurisdictional impediment to complying with this Court's mandate.

The District Court again overruled Cohen's objections and granted the motion to dismiss with prejudice on the ground that it lacked jurisdiction to adjudicate the Derivative Action. Without any analysis of the jurisdictional issue, the District Court held that this Court's mandate was no bar to dismissal because the decision in *Cohen* did not expressly "mention [the Company's] bankruptcy in any way, shape or form." A-331-A-332 (Tr. 84:22-85:4). In fact, the *Cohen* decision was issued five months *after* the Company's bankruptcy filing and five months *after* this Court had received notice of such filing. A-165 (Suggestion of Bankruptcy dated April 19, 2010). Without explaining the significance of this Court's failure to "mention" the bankruptcy in its decision, the District Court essentially went ahead and adjudicated the merits of the Derivative Action, but failed to reexamine the Fee Issues in disregard of this Court's mandate. Because the District Court cannot simply pick and choose the issues it wants to address, in violation of the mandate of this Court, the order granting the motion to dismiss must be vacated.

# FACTS

## A. Background

In the fall of 2005, a number of derivative and class action lawsuits were commenced against officers and directors of the Company alleging massive fraud, habitual self-dealing and insider trading. These lawsuits were ultimately consolidated into the Class Action and the Derivative Action. *See* Docket Nos. 45-47.

In November 2006, the parties agreed to the Stipulation of Settlement, which resolved both the Derivative Action and the Class Action in a combined settlement agreement. Pursuant to the Stipulation of Settlement, the Company agreed to (i) pay $35,200,000 and contribute approximately 3 million shares of stock, with no contribution from the individual defendants, (ii) release all claims against the individual defendants, (iii) indemnify the defendants against claims made by stockholders and persons opting out of the Class Action, and (iv) indemnify Brooks and CFO Dawn Schlegel for their obligation to reimburse the Company under SOX 304. *See* A-125-A-127, ¶¶ 2.1, 2.2, 2.4; A-139-A-142, ¶ 4. To fund the cash portion of the settlement, Brooks purchased additional stock from the Company for approximately $22.5 million. *See* A-125, ¶ 2.1. The remaining cash to fund the settlement came from the Company's D&O insurance policies. *See* A-126, ¶ 2.2.

B-18

Although the derivative plaintiffs alleged the defendants received illegal proceeds of over $220 million (*see* Docket No. 59 (Amended Complaint), ¶ 145), Derivative Counsel agreed to settle their claims in return for nothing more than the adoption of certain boilerplate corporate governance guidelines. A-130-A-137, ¶¶ 2.12, 2.13. For their work in negotiating the Stipulation of Settlement, including the illegal $186 million indemnification of Brooks, Derivative Counsel were awarded $300,000, which the District Court allowed to be paid in advance, prior to the outcome of Cohen's successful appeal.[8] A-146-A-147, ¶ 6.5.

B. Section 304 of the Sarbanes-Oxley Act

Enacted in the wake of the Enron scandal, SOX 304 provides that if a public company is required to restate its financial reports as a result of misconduct, the CEO and the CFO must reimburse the Company for all bonuses, incentive-based compensation, and trading profits they received attributable to the restatement period. 15 U.S.C. § 7243. The purpose of SOX 304 is to promote integrity in financial reporting for public companies and to ensure that senior officers responsible for filing the company's financial reports do not personally profit from false financial reports. *Cohen*, 622 F.3d at 195.

---

[8] Class and Derivative Counsel were paid an advance of $9.965 million in 2008, subject to an obligation to repay if the Stipulation of Settlement was not finally approved (*see* A-146, ¶ 6.4). In fact, they never repaid the advance even though the Stipulation of Settlement was vacated by the *Cohen* decision.

B-19

SOX 304 is virtually a strict liability statute. If a company is required to restate its financials, the CEO and CFO *must* reimburse the company for the amount they received in bonuses, incentive compensation, and trading profits. *See* 15 U.S.C. § 7243. It is a "mandatory duty." *Cohen*, 622 F.3d at 194. Another important feature of SOX 304 is that, while the public company is entitled to be reimbursed by the CEO and CFO, only the SEC can pursue recovery under SOX 304. *Id.*

On October 1, 2007, before the approval of the Stipulation of Settlement by the District Court in June 2008, the Company restated its financial reports for 2003, 2004, and 2005.[9] The Company also announced that its actual gross profit margins and net income for those years were materially lower than it had previously disclosed. As of that filing, Brooks' liability under SOX 304 was a virtual certainty.

On October 25, 2007, the SEC brought a civil action against Brooks in the Southern District of Florida seeking reimbursement of bonuses and stock profits pursuant to SOX 304. *See SEC v. David H. Brooks*, No. 07-61526 (S.D. Fla.) (the "SEC Action"). The SEC alleged Brooks' trading profits totaled approximately $186 million. *See Cohen*, 622 F.3d at 192.

---

[9] A copy of the Company's 10K is available at:
https://www.sec.gov/Archives/edgar/data/899166/000119312507210399/d10k.htm
(last accessed on December 29, 2015).

B-20

C. <u>2006 Stipulation of Settlement</u>

The Stipulation of Settlement was a phenomenal deal for Brooks. By buying additional Company stock for approximately $22.5 million, he not only further entrenched his control of the Company, he received an indemnification for a virtually certain $186 million liability in the SEC Action. *See* A-141, ¶ 4.7.

Cohen understood that this was a grossly unfavorable deal for the Company and its shareholders. The Company received no monetary consideration in the settlement and gave up a recovery of $186 million. The shareholders would have been better off had counsel never commenced the Derivative Action because the Company would have retained the right to be reimbursed $186 million by Brooks under SOX 304.

The indemnification also violated public policy. *Cohen*, 622 F.3d at 195. The Government argued that it "impede[d]" and "undermine[d]" the SEC's prosecution of the SOX 304 claim because any judgment obtained in the SEC Action would simply be repaid *back to Brooks*. *See* Brief of the United States as Amicus Curiae, 2009 WL 7755913 (July 20, 2009) (the purpose of the provision was to "insulate Brooks from any liability under section 304 and undermine the pending Commission enforcement action. . . . If the Commission succeeds in its civil action in obtaining a reimbursement order against Brooks under section 304, Brooks will technically be liable to the company, which, in turn, will have to

B-21

indemnify Brooks for that same liability. The result is a complete wash for Brooks.").

D. Cohen's 2008 Appeal and Preservation of the SOX 304 Claim

Well before Brooks' indictment and criminal conviction, Cohen objected to the Stipulation of Settlement on the grounds that the SOX 304 indemnification violated public policy, and that the settlement was unfair, inadequate and unreasonable. Docket Nos. 144 and 171.

The District Court overruled Cohen's objections and approved the Stipulation of Settlement in 2008. *See* Docket No. 212. The District Court also denied Cohen's application for his fees and expenses and overruled his objection to the fees and expenses awarded to Derivative Counsel. Docket Nos. 174, 176, 211 and 212. Cohen was the only party to prosecute an appeal from the approval of the Stipulation of Settlement, but due to the importance of the SOX 304 issue raised by Cohen, the Department of Justice and the SEC supported his appeal as *amicus curiae*. *See* Brief of the United States as Amicus Curiae, 2009 WL 7755913 (July 20, 2009). Cohen also appealed the denial of his application for fees and expenses, and the order awarding fees to Derivative Counsel. Docket No. 214.

After the appeal was fully briefed and argued, the Company commenced a voluntary case under title 11 of the United States Code, 11 U.S.C. §§ 101-1532. On or about April 19, 2010, before any decision was rendered on Cohen's appeal,

B-22

the Company notified this Court of its filing for bankruptcy relief. A-165 (Suggestion of Bankruptcy dated April 19, 2010).

On September 30, 2010, this Court issued its decision vacating the judgment approving the Stipulation of Settlement and agreeing with Cohen that the Stipulation of Settlement impermissibly released and indemnified Brooks against liability under SOX 304. This Court acknowledged that Cohen's appeal furthered "important public purposes" by raising "novel issues of law" that were vital to maintaining the "integrity of the financial markets." *Cohen,* 622 F.3d at 193, 195.

In light of the decision vacating the Stipulation of Settlement, this Court did not reach the issue of whether the Stipulation of Settlement was fair, reasonable and adequate. Nor did this Court determine the Fee Issues. Instead, this Court vacated the orders concerning the Fee Issues and remanded the case to the District Court to reexamine those issues "in the context of a revised settlement." *Id.* at 196. Specifically, this Court stated:

> Because we conclude that the indemnification and release provisions of the Settlement violate § 304 of the Sarbanes-Oxley Act, 15 U.S.C. § 7243, we do not reach the question of whether the Settlement is substantively and procedurally fair, reasonable, and adequate. ***Nor do we reach the issues pertaining to attorneys' fees. The district court will need to reexamine those issues in any event, either in the context of a revised settlement or the outcome of further litigation***.
>
> For the foregoing reasons, ***the judgement of the district court is VACATED and the case is REMANDED to the***

B-23

> ***district court for proceedings consistent with this opinion***.

*Cohen*, 622 F.3d at 196 (emphasis supplied).

Cohen's appeal and this Court's decision established a significant precedent. *See, e.g.,* Mark Hamblett, Circuit Rejects Pact's 'End-Run' Around Liability for Ex-Executives, NEW YORK LAW JOURNAL, Oct. 1, 2010; Mike Cherney, *2nd Circ. Throws Out DHB Shareholder Settlement*, LAW360 (Sept. 30, 2010);[10] Melissa Maleske, *Executives Can't Negotiate Away SOX Clawbacks*, INSIDE COUNSEL (Jan. 1, 2011).[11] Prior to Cohen's appeal, SOX 304 was viewed as an underutilized tool for assuring accurate financial reporting by public companies. *See, e.g.,* Allison List, *The Lax Enforcement Of Section 304 Of Sarbanes-Oxley: Why Is The SEC Ignoring Its Greatest Asset In The Fight Against Corporate Misconduct?*, 70 OHIO ST. L.J. 195 (2009); Rachael E. Schwartz, *The Clawback Provision Of Sarbanes-Oxley: An Underutilized Incentive To Keep The Corporate House Clean*, 64 BUS. LAW. 1 (2008). Cohen's appeal made certain that, going forward, corporate executives could no longer "use a settlement with a class plaintiff or derivative

---

[10] Available at:
http://www.law360.com/articles/197947/2nd-circ-throws-out-dhb-shareholder-settlement (last accessed December 29, 2015).

[11] Available at:
 http://www.insidecounsel.com/2011/01/01/executives-cant-negotiate-away-sox-clawbacks (last accessed December 29, 2015).

B-24

plaintiff to get relief under Section 304." *See* Melissa Maleske, Executive Can't Negotiate Away SEC Clawbacks, Inside Counsel, (Jan. 1, 2011).

On October 28, 2010, this Court issued its mandate remanding this case back to this Court for "proceedings consistent with [its] opinion." A-182. Neither the Company nor any of the other losing parties to the appeal sought further review or questioned the remand back to the District Court.

E. <u>The Turnover Proceeding</u>

Despite the fact that there was no final judgment in the Derivative Action as a result of Cohen's appeal, and therefore the conditions were not met for the Stipulation of Settlement to become effective, the District Court allowed counsel in the Class Action and the Derivative Action an advance of nearly $10 million in fees, subject to an obligation to repay such fees if the settlement did not become effective. A-146, ¶ 6.4. On November 16, 2010, following this Court's *Cohen* decision, the Company commenced an adversary proceeding against Derivative Counsel and counsel in the Class Action (the "Turnover Proceeding") seeking the recovery of, among other things, nearly $10 million in fees advanced to them in connection with the then-vacated Stipulation of Settlement.

As part of the Current Settlement, Derivative Counsel and counsel in the Class Action are to retain all of the fees they were awarded in 2008, including the $9,925,000 they were advanced and failed to repay, even though their settlement

19

B-25

was found to violate public policy and undermine the enforcement of the securities laws. A-57 ¶ 2(a), A-65, ¶ 8. In addition, bankruptcy counsel for the class were to receive another $1.5 million. A-65, ¶ 8.

F. Certain Parties to Stipulation of Settlement Execute the Current Settlement in 2015

On November 25, 2014, the Company filed a term sheet with the Bankruptcy Court setting forth the basic terms of their proposed settlement (the "Term Sheet"). A-184-A-196. Paragraph 8(e) of the Term Sheet required approval of the settlement in the Derivative Action as a condition of the effectiveness of the settlement. A-189 (requiring "[a]pproval of the Definitive Settlement by the District Court in the . . . Derivative Action"). "Derivative Action" was defined as "the consolidated derivative action captioned *In re DHB Industries, Inc. Derivative Litigation,* Case No. 05-cv-04345 (E.D.N.Y.)." A-184.

Because the settlement required approvals by both the Bankruptcy Court and the Eastern District of New York, on December 5, 2014, Cohen filed a reservation of rights with the Bankruptcy Court in which he stated that, in accordance with this Court's mandate, he intended to litigate the Fee Issues in the Derivative Action, and not the Bankruptcy Court, when the matter was presented to the District Court for approval pursuant to Paragraph 8(e) of the Term Sheet. A-199 (Reservation of Rights), ¶ 3. The Company did not take issue with that position or otherwise respond to the Cohen's reservation of rights.

B-26

On February 6, 2015, the Company filed the Current Settlement in the Bankruptcy Court. Consistent with Paragraph 8(e) of the Term Sheet, Paragraph 1(b) of the Current Settlement explicitly required approval of the settlement by the District Court in the Derivative Action. Specifically, Paragraph 1(b) stated that "the effective date of this Agreement . . . shall occur upon satisfaction *of each of the following conditions . . . (b) Entry of an order(s) by the District Court in the . . . Derivative Action approving the Agreement*." A-57, ¶ 1(b) (emphasis supplied). Cohen again filed a reservation of rights making it clear that he would not litigate the Fee Issues in the Bankruptcy Court. Once again, the Company did not respond.

The Current Settlement envisioned a two-step process for dismissal of the Derivative Action. First, pursuant to Paragraph 1(b), the agreement would be presented to, and approved by, the District Court in the Derivative Action. A-57. Second, pursuant to Paragraph 6(a), upon the approval in the Derivative Action becoming "final and non-appealable," the parties would enter into a "stipulation[ ] of dismissal with prejudice." A-64 ("Upon each of the Court Approvals [including approval in the Derivative Action] becoming final and non-appealable. . . The Parties will enter into appropriate stipulations to dismiss with prejudice . . . (v) the Derivative Action.").

B-27

G. The Company Reveals Plan to Ignore the Terms of its Own Agreement and
Forego Approval in the Derivative Action

On February 24, 2015, Cohen wrote to the District Court regarding the need for the District Court to "examine the proposed settlement pursuant to the Second Circuit's directive on remand." Docket No. 257, p. 2. On June 17, 2015, Cohen again wrote to the District Court regarding the Company's failure to move for approval of the Current Settlement in the Derivative Action as required by Paragraph 1(b) of the Current Settlement. A-208. The letter further noted that in light of this Court's mandate in *Cohen*, any dismissal without first addressing the Fee Issues would be improper. A-209.

On June 25, 2015, over seven months after filing the Term Sheet requiring approval in the Derivative Action (*see* A-184-A-196) and over six months after Cohen filed his initial reservation of rights (*see* A-198-A-206), the Company stated for the *first* time that, notwithstanding the plain language of the Current Settlement, the Company would *not* seek approval of the settlement in the Derivative Action. A-215-A-220. In its letter to the District Court, the Company acknowledged the two-step process for dismissal of the Derivative Action set forth in the Current Settlement:

> Pursuant to section 1 of the amended agreement, the effective date of the agreement will occur upon the satisfaction of three conditions: . . . (2) entry of an order(s) by [the District Court] approving the settlement in the Class and Derivative Actions . . . [U]pon each of

> the Court Approvals becoming final and non-appealable,
> the parties will dismiss . . . the Derivative Action with
> prejudice.

A-218. The Company then stated that it only intended to file a motion to dismiss

the Derivative Action with prejudice, incorrectly (and nonsensically) asserting that

this procedure is "in accordance with the terms of the settlement agreement." *Id*.[12]

## H. Approval of the Current Settlement in the Bankruptcy Court

On February 6, 2015, as part of the process requiring parallel approvals by

the Bankruptcy Court and by the Eastern District of New York in both the Class

Action and Derivative Action for the Current Settlement to become effective, the

Company moved for approval of the Current Settlement in the Bankruptcy Court

pursuant Federal Rule of Bankruptcy Procedure 9019. An evidentiary hearing was

held on June 12, 2015. In the meantime, an approval hearing in the Class Action

was scheduled for August 18, 2015 in the Eastern District of New York.

On July 6, 2015, the Bankruptcy Court approved the Current Settlement. A-

98-A-100. However, because of the Company's June 25th about-face regarding

the need for approval of the settlement in the Derivative Action, the Bankruptcy

---

[12] Ten days later, the Bankruptcy Court acknowledged that the "clear and plain" terms of the Current Settlement required approval of the settlement *by the District Court in the Derivative Action*. A-91 (Tr. 153:8-12) ("THE COURT:. . . There's no question, I mean, I think it's clear and plain from the document as drafted that it was contemplated . . . there would be an entry of an order by the District Court, which is defined as the Eastern District of New York, in the derivative action approving the agreement.").

B-29

Court ruled (over the objection of the Company) that due process required that Cohen have a hearing on the Fee Issues. A-91 (Tr. 153:17-22) ("Mr. Cohen's lawyer has made a – an argument with some force that . . . he was relying on having an opportunity to make an argument in connection with the settlement of the derivative claim at the time that was going to be put before the District Court"). Because of the Bankruptcy Court's finding that it had "exclusive jurisdiction" over *all* claims in the Derivative Action (notwithstanding the mandate in *Cohen*), the Bankruptcy Court scheduled a hearing to determine the Fee Issues. Cohen disputed the Bankruptcy Court's determination that it had exclusive jurisdiction to adjudicate the Fee Issues and appealed that ruling to the United States District Court for the District of Delaware. Cohen's appeal has not yet been briefed and remains pending.

## I. Bankruptcy Court Hearing on Fee Issues

After the District Court dismissed the Derivative Action with prejudice over Cohen's objection on August 18, 2015, and Cohen appealed from the dismissal on September 16, 2015 (A-356), a hearing on the Fees Issues took place in the Bankruptcy Court on November 11, 2015. At that point, the *only* remaining forum to litigate the Fee Issues was the Bankruptcy Court. Without withdrawing his previous reservations of rights or otherwise waiving his objections to the

B-30

Bankruptcy Court's jurisdiction or withdrawing his appeal to the District of Delaware or his appeals to this Court, Cohen applied for his fee award.

The Bankruptcy Court held Cohen was entitled to a fee award in an undetermined amount that he could apply for at some point in the future, but *only* if there was a recovery by the bankrupt Company under SOX 304. A-557-A-558 (Tr. 199:18-200:7); A-602-A-604. The SEC's action against Brooks under SOX 304 is currently stayed pending the outcome of Brooks' criminal appeals.[13] Whether the SOX 304 claim is pursued after Brooks' criminal appeals are concluded is a matter entirely in the discretion of the SEC. Whether Brooks will have any assets available to satisfy a SOX 304 claim, or whether his assets restrained in the District Court will be used to pay the restitution that has been awarded, or to pay remission and other claims, is entirely unknown. Whether the SEC will choose to remit all or any part of the proceeds of a SOX 304 recovery to the Company, which no longer has any operations or shareholders, is likewise unknown. The bottom line is that Cohen received *nothing*. The Bankruptcy Court's ruling that Cohen is "entitled" to an award of fees (that he may or may not be able to apply for in the future) is entirely illusory, forcing Cohen to assume all of the risks of subsequent events for which Cohen was entirely blameless (i.e.,

---

[13] Only the SEC has the right to pursue a SOX 304 claim. *Cohen,* 622 F.3d at 194.

Brooks' criminal conviction and the seizure of his assets) in order to recover *any* fees for his meritorious objection (2007-2008) and his successful appeal (2008-2010) on an issue of significant public importance.[14]   Meanwhile, those who supported and defended the illegal indemnification of Brooks in the District Court and in this Court have been paid in full.[15]

## ARGUMENT

### THE ORDER DISMISSING THE DERIVATIVE ACTION WITH PREJUDICE MUST BE VACATED

A motion to dismiss pursuant to Rule 41(a)(2) can only be made on terms that are "proper."  The District Court's dismissal with prejudice was improper, and must be reversed, for at least three reasons.

First, the dismissal violated this Court's unambiguous mandate that the District Court "reexamine [the Fee Issues] in the context of a revised settlement." *Cohen*, 622 F.3d at 196.  The mandate was issued after the Company had filed for bankruptcy and after this Court was notified of the filing.  A-165 (Suggestion of Bankruptcy filed April 19, 2010); A-182 (Judgment and Mandate issued October 28, 2010).  The District Court is obligated to "scrupulously and fully carr[y] out"

---

[14]   The Bankruptcy Court ruling would place Cohen in the bizarre position of depending on Brooks' success in overturning his criminal conviction or restitution award for there to be sufficient assets to satisfy the SEC's SOX 304 claim.

[15]   Cohen has timely appealed from this ruling as well.  A-605.

B-32

the mandate, and its failure to do so requires reversal. *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992).

The District Court's dismissal on the grounds that it lacked jurisdiction was improper and contrary to law. There is no doubt that the District Court continued to have jurisdiction over the Derivative Action following the Company's filing. Indeed, its dismissal *with prejudice* was an adjudication on the merits of the derivative claims. The District Court cannot adjudicate the merits yet refuse to adjudicate the Fee Issues in disregard of this Court's mandate. Approval of the settlement in the Derivative Action would have required the District Court to address the Fee Issues remanded by this Court. Instead, the District Court allowed the losing parties in *Cohen* to manipulate the process to deny Cohen the fees he had unquestionably earned.

Second, dismissal was improper pursuant to the terms of the settlement agreement itself. The Current Settlement required the approval of the District Court in the Derivative Action as a condition precedent to effectiveness. That inconvenient requirement was never altered, only ignored.

Finally, the dismissal unfairly prejudiced Cohen. Pursuant to this Court's decision, Cohen is entitled to a determination on the Fee Issues in the Eastern District of New York before a district court judge under the standard applicable in the Second Circuit, not in Delaware and not before a bankruptcy court which lacks

B-33

jurisdiction over shareholder derivative actions and lacks experience with the fee applications of successful objectors.

### A. The District Court's Dismissal Violated this Court's Mandate to Reexamine the Fee Issues

  i.   *This Court's Mandate Expressly Required the District Court to Reexamine the Fee Issues in the Context of the Current Settlement*

Following the issuance of an opinion, an appellate court may issue a mandate and remand a case back to the district court for further proceedings consistent with its opinion.  *See, e.g.*, 28 U.S.C. § 2106 ("any other court of appellate jurisdiction may . . .  remand the cause and . . . require such further proceedings to be had as may be just under the circumstances"); FED. R. APP. P. 41 (appellate court must issue mandate within 7 days after time to request rehearing expires); *Ostrer v. United States,* 584 F.2d 594, 598 (2d Cir. 1978) (the mandate brings the appellate proceedings to a close and returns the case "to the forum from whence it came").  "No rule of American jurisprudence is better established than the salutary one which requires a lower court to carry out faithfully the express mandate of its appellate superior."  *Slotkin, by Slotkin v. Citizens Cas. Co. of New York,* 698 F.2d 154, 155 (2d Cir. 1983).

A mandate operates as "law of the case," and a district court may not deviate from its terms.  *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992) (modifying district court judgment because district court failed to comply with

B-34

mandate); *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1508 (11th Cir. 1987) ("Appellate courts have the power to issue mandates which are commands that cannot be ignored. Absent a Supreme Court decision to the contrary, district courts are compelled to follow mandates of appellate courts"); *see also, e.g.*, 16AA Fed. Prac. & Proc. Juris. § 3987 (4th ed.) (following issuance of mandate, the case is returned to the district court for all "further proceedings [as] are appropriate or necessary in light of the mandate").

"Under the law-of-the-case doctrine, where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (internal quotations omitted). "Where issues have been explicitly *or* implicitly decided on appeal, the law-of-the-case doctrine obliges the district court on remand to follow the decision of the court of appeals." *Id.* (internal quotations omitted).

Accordingly, a district court has "no discretion" regarding compliance with a mandate. Its sole obligation when confronted with a mandate is to ensure that its terms are "scrupulously and fully carried out" with respect to both "the express terms [and] the spirit of the mandate." *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d at 69; *Calderon v. Astrue*, 683 F.Supp. 2d 273, 276 (E.D.N.Y. 2010) (district court has "an obligation to do nothing contrary to the letter or the spirit of the mandate

B-35

. . . an inferior court is bound by the decree [of the mandate] as law of the case.")
(internal quotations and citations omitted). "[B]ecause the district court has no
discretion in carrying out the mandate, the appellate court retains the authority to
determine whether the terms of the mandate have been scrupulously and fully
carried out." *In re Ivan F. Boesky Sec. Litig.,* 957 F.2d at 69; *see also Slotkin,* 698
F.2d at 155 (rejecting party's attempt to "circumvent[ ] lower-court compliance"
with mandate by deviating from "the way this Court wrote the script").

This Court's previous decision vacated the Stipulation of Settlement.
*Cohen*, 622 F.3d at 196. In light of this Court's decision vacating the original
settlement, this Court did not address the Fee Issues raised on appeal. Instead –
informed by the Company of its bankruptcy filing (*see* A-164) – this Court vacated
the District Court's orders regarding fees and ordered "[*t*]*he district court* . . . to
reexamine [the Fee Issues] in the context of a revised settlement or further
litigation" and remanded the case back to the District Court for "proceedings
consistent with [its] opinion." *Cohen*, 622 F.3d at 196 (emphasis supplied); *see
also* A-182 (Judgment and Mandate issued on October 28, 2010) (remanding case
to District Court for "further proceedings in accordance with [its] opinion").

This Court's mandate is clear. The District Court had a duty to reexamine
the Fee Issues following the execution of the Current Settlement. If the Company
believed that this Court's decision was wrong, unclear or improper, it had the

B-36

burden to appeal, move for a rehearing *en banc* (*see* FED. R. APP. P. 40), or seek modification of the ruling. It took none of these steps.[16] The mandate is now the law of the case, and the District Court was required to "scrupulously and fully carr[y] out," both "the express terms [and] the spirit" of the mandate by reexamining the Fee Issues in the context of the new settlement. *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d at 69; *see also Litman,* 825 F.2d at 1516 ("[the] failure to seek modification of our decision had the effect of binding the district court to our instructions as set forth in the clear mandate."). The District Court's dismissal with prejudice absent reexamination of the Fee Issues "[was] not the way this Court wrote the script." *Slotkin,* 698 F.2d at 157. As such, it violated the mandate, was unfairly prejudicial to Cohen, and thus must be reversed.

### ii. *The District Court's Basis for Dismissal Was Contrary to Law*

The District Court dismissed the Derivative Action with prejudice based on an alleged lack of jurisdiction because "the Bankruptcy Court ha[d] exclusive jurisdiction of the Derivative Action claims." Docket No. 264, p. 12. This rationale is clearly wrong.

---

[16] Nor did it seek to transfer the Derivative Action to the Bankruptcy Court (*see* 28 U.S.C. § 1404), undoubtedly because the Bankruptcy Court could not exercise jurisdiction over such claims.

B-37

> a. The District Court Maintained Jurisdiction to Adjudicate the
> Claims in the Derivative Action

A bankruptcy filing does not divest a district court of jurisdiction to adjudicate derivative claims. While a bankruptcy filing stays matters pending *against* the debtor (*see* 11 U.S.C. § 362), the debtor as plaintiff is free to continue to litigate its own claims outside of the bankruptcy court – including derivative claims. *See, e.g.*, *In re Brateman Bros., Inc.*, 135 B.R. 853, 856 (Bankr. N.D. Ind. 1991) ("Since the derivative action is property of the bankruptcy estate and the right to prosecute it is now vested exclusively in the trustee, it is the trustee who should have the opportunity to determine what will become of the law suit *and where it will be prosecuted*") (emphasis supplied); *In re Greenwood Supply Co.*, 295 B.R. 787, 795 (Bankr. D. S.C. 2002) ("The effect of a derivative suit becoming part of the bankruptcy estate is that . . . the debtor-in-possession or the trustee decides *how, when, and if the suit will proceed.*") (emphasis supplied); *see also* F. R. BANKR. P. 9027 (allowing bankruptcy court to transfer venue of adversary proceeding to non-bankruptcy court).

In fact, at the August 18, 2015 hearing before the District Court, the Company's lawyer acknowledged the District Court's continuing jurisdiction over the Derivative Action. *See* A-324 (Tr. 77:8-13) ("KORNFELD: . . . "[d]erivative actions get litigated all the time in state courts and federal courts, then become property of the debtor's estate, and continue to be litigated in state courts and

federal courts"). And the Company's lawyer also acknowledged that the District Court was the *only forum* in which the Derivative Action could be litigated because Bankruptcy Court lacked jurisdiction to adjudicate those claims. A-324 (Tr. 77:23-25 ("KORNFELD: . . . a bankruptcy court could not hear a derivative action with all kinds of claims against defendants that haven't filed claims in the bankruptcy [court].").

Moreover, neither the Company nor the District Court cited any authority that would allow "an inferior court" to ignore a mandate based on a bankruptcy filing that occurred *before* the issuance of the mandate – an argument that runs counter to this Court's precedent. *See, e.g., In re Ivan F. Boesky Sec. Litig.*, 957 F.2d at 69 (district court obligated to "scrupulously and fully carr[y] out" mandate); *see also Calderon*, 683 F.Supp. 2d at 276 (district court has "an obligation to do nothing contrary to the letter or the spirit of the mandate . . . [and] is bound" by the mandate as law of the case). Accordingly, dismissal based on the alleged "exclusive jurisdiction of the Bankruptcy Court" was clearly wrong.[17]

---

[17] In addition, the plain language of the Current Settlement – requiring approval by the District Court *in the Derivative Action* (*see* A-57, ¶1(b)) – was effectively an authorization for the District Court to adjudicate the issues remanded by this Court.

b. The District Court Had Jurisdiction to Adjudicate – and in Fact Did Adjudicate – the Claims in Derivative Action, And Thus It Had Jurisdiction to Adjudicate the Fee Issues

A dismissal with prejudice *is* an adjudication on the merits. *See, e.g., Nemaizer v. Baker*, 793 F.2d 58, 60-61 (2d Cir. 1986) ("A dismissal with prejudice . . . . constitutes a final judgment"); *see also Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*."); *Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, No. 90 Civ. 1476 (MJL), 1997 WL 582823, at *6 (S.D.N.Y. Sept. 19, 1997) ("A dismissal with prejudice pursuant to Rule 41(a)(2) constitutes an adjudication on the merits in a defendant's favor."). Thus, the District Court dismissed the claims in the Derivative Action with prejudice – and thus adjudicated those claims on the merits – on the mistaken and self-contradictory grounds that it *lacked* jurisdiction to adjudicate those claims on the merits.

Because it could (and did) exercise jurisdiction over the claims in the Derivative Action, the District Court had jurisdiction to adjudicate the Fee Issues, which it was "commanded" to do by this Court on remand. *See Litman,* 825 F.2d at 1508 (mandates are "commands that cannot be ignored. . . district courts are compelled to follow mandates of appellate courts"). The District Court may not ignore this Court's mandate, and otherwise pick and choose the issues it wants to

address.  Instead, it must strictly adhere to "the way this Court wrote the script."

*Slotkin,* 698 F.2d at 157.  The District Court was *obligated* to reexamine the Fee

Issues, and its failure to do so renders the dismissal improper as a matter of law.

B. Dismissal With Prejudice Was Improper Because the Current Settlement
Itself Required Approval in the Derivative Action

Not only does the dismissal lack a legal basis (*see* Point A, *supra*), it lacks a

factual basis as well.  The Company's own agreement sets forth a two-step process

for dismissing the Derivative Action.  First, the agreement *requires* as a condition

of the effectiveness of the Current Settlement, "an order[ ] of approval by the

District Court . . . in the Derivative Action."  A-57, ¶ 1(b).  Second, following

such approval, the agreement contemplates the filing of a stipulation of dismissal

with prejudice signed by all parties to the Derivative Action.  A-64, ¶ 6(a).  The

Company acknowledged this two-step approval process.  A-218.  And the Current

Settlement was approved by the Bankruptcy Court with this language and the two-

step approval process intact.  A-98-A-100; *see also* A-91 (Tr. 153:8-11) (approval

in the Derivative Action was required by the agreement's "clear and plain" terms).

Because the Current Settlement's own terms provide authorization for

approval by the District Court in the Derivative Action, the District Court was

wrong in holding that a *denial* of the motion to dismiss would have a "very

negative effect" on the settlement.  *See* A-332 (Tr. 85:5-9).  Although this alleged

"negative effect" is not a basis for ignoring this Court's mandate and disregarding

Cohen's rights, it is, in fact, the grant of the motion and the consequent *lack of approval* in the Derivative Action that will "very negative[ly] effect" the settlement by ensuring that it will *never* become effective. A-57, ¶ 1(b) (requiring approval in the Derivative Action as a condition to effectiveness).

Including a provision requiring approval by the District Court in the Derivative Action was no drafting error. Both the Stipulation of Settlement and the Current Settlement expressly required approval in the Derivative Action as a condition to the Effective Date of the settlement. A-121; A-148, ¶ 7.1(e); A-57, ¶ 1(b). It is a testament to the Company's stubborn commitment to deny Cohen the compensation he earned as the prevailing party in an important appeal that it was willing to jeopardize its own settlement and guarantee further litigation by arrogantly refusing to follow the unambiguous terms of the agreement it drafted. Indeed, the parties are *still* litigating whether effective date of the 2006 Stipulation of Settlement ever occurred. *See In re DHB Industries, Inc. Class Action Litigation,* Second Circuit Case Nos. 15-2932(L), 15-2935.

C. Dismissal Prejudiced Cohen's Rights to Be Heard on the Fee Issues in the District Court

A court may deny a motion to dismiss if dismissal will prejudice another party to the litigation. *See, e.g., Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001) (dismissal under Rule 41 is permitted if party is not prejudiced). As set forth above, Cohen is entitled to have his fee claim heard in the Eastern District of New

B-42

York, pursuant to this Court's mandate, under this Court's standard for awarding fees to those who assert meritorious objections to settlements presented for court approval. *White v. Auerbach*, 500 F.2d at 828 (objectors to derivative settlement entitled to fees where objections improved settlement); *see also Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000); *Detroit v. Grinnell,* 495 F.2d 448, 470 (2d Cir. 1974).[18]    Compelling Cohen to litigate the Fee Issues in Delaware before the Bankruptcy Court prejudiced Cohen, including burdening him with *additional* out-of-pocket fees and expenses for retaining local counsel (*see* Delaware Local Rule 9010-1-1(c) (requiring association with local counsel and local counsel's appearance at all hearings)) and costs associated with travel to and from Delaware.

Cohen already has incurred well over $1.5 million in fees and expenses in objecting to the Stipulation of Settlement, prosecuting his appeal and preserving his rights to payment of his fees and expenses, all in the face of stubborn opposition from the Company and its allies.  Forcing Cohen to incur further fees and expenses in litigating the Fee Issues in Delaware, including an appeal of the

---

[18] This Court has established a multi-factor test for determining a reasonable fee award for objectors, like Cohen, who raised and prosecuted meritorious objections and improved the settlement.  These factors include (i) the size of the fund created, (ii) public policy considerations, (iii) the skill and efficiency of counsel, and (iv) risk of litigation/non-payment where counsel agreed to retention on a contingency fee basis. *See Goldberger,* 209 F.3d at 50; *Grinnell,* 495 F.2d at 470.  All of these factors weigh heavily in Cohen's favor.

Bankruptcy Court orders on the Fee Issues, was grossly unfair and improper. More importantly, Cohen was entitled to a hearing by an Article III district court judge in the Eastern District of New York under the standard prevailing in the Second Circuit, not by a bankruptcy court judge in Delaware who is unfamiliar with derivative actions and the importance of awarding legal fees to successful objectors in such cases. *Cohen*, 622 F.3d at 196 (remanding case to District Court to reexamine Fee Issues); A-182 (remand to District Court for "further proceedings in accordance with the opinion of this Court"); *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d at 69 (district court must "scrupulously and fully carr[y] out" "the express terms [and] the spirit of the mandate.").

In any event, the Bankruptcy Court did not address the issue of Cohen's fees in connection with the revised settlement, only after the settlement had been approved, and did not even decide Cohen's fees, but only invited him to file a fee application in the future, if and when there is a SOX 304 recovery for the Company. A-557-A-558 (Tr. 199:15-200:7); A-602-A-604.

D. On Remand, Reassignment to a New District Court Judge is Warranted

If Cohen is once again successful on appeal, Cohen respectfully requests that this Court reassign this action to a different district court judge on remand. Reassignment to a different district court judge is within this Court's power. *Pescatore v. Pan American World Airways, Inc.,* 97 F.3d 1, 21 (2d Cir. 1996)

B-44

("This Court has the power to remand the case to a different judge. . ."). Reassignment to a new district court judge is appropriate "to preserve the appearance of justice." *United States v. Londono,* 100 F.3d 236, 242 (2d Cir. 1996) (internal quotations omitted). After overruling Cohen's meritorious objection in 2008, the District Court's disregard of an appellate court mandate to address Cohen's fee claim is sufficient grounds to reassign a case to a new district court judge because it might cause "an objective observer . . . [to] question [the district judge's] impartiality." *United States v. Peguero,* 367 F. App'x 170, 172 (2d Cir. 2010) (reassignment warranted where district judge neither "acknowledged nor acted upon" mandate); *see also, e.g., U.S. ex rel. Little v. Shell Expl., Prod. Co.*, 602 F. App'x 959, 976 (5th Cir. 2015) (reassignment appropriate where "district judge disregarded [appellate court's] clear mandate and failed to . . . address the specific questions we set out in that opinion."). In light of this District Court's manifest disregard for this Court's mandate (*see* pp. 28-31, *supra*), reassignment to a new district court judge on remand is warranted.

B-45

## CONCLUSION

For the reasons set forth herein, Appellant D. David Cohen respectfully requests that this Court (i) vacate the order dismissing the Derivative Action with prejudice, and remand this case to a different district court judge for further proceedings, (ii) determine that Cohen is entitled to a legal fee award that includes, but is not limited to, fees and expenses incurred in connection with his original meritorious objection, his successful appeal concerning the Stipulation of Settlement, and the further litigation and appeals concerning the Current Settlement in accordance with this Court's precedents for fee awards to objectors, and (iii) grant such other relief as this Court deems just and proper.

Dated:     December 29, 2015
           New York, New York

                         CARTER LEDYARD & MILBURN LLP

                         By:  /s/ Gary D. Sesser

                            Gary D. Sesser
                            William F. Sondericker
                            Leonardo Trivigno
                            2 Wall Street
                            New York, New York  10005
                            Tel.   (212) 732-3200

                            *Attorneys for Intervenor-Appellant D.
                            David Cohen*

B-46

2016 WL 4059543
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

D. DAVID COHEN, Intervenor-Appellant,
THOMAS HUSTON, derivatively on behalf
of DHB Industries, Inc., BRIAN ABRAMS,
ALVIN VIRAY, Class Action Plaintiffs, Plaintiffs,
v.
DHB INDUSTRIES, INC., nominal defendant,
a Delaware Corporation, Defendant-Appellee,
DAVID H. BROOKS, SANDRA L. HATFIELD,
DAWN M. SCHLEGEL, JEROME KRANTZ,
GARY NADELMAN, CARY CHASIN, BARRY
BERKMAN, LARRY ELLIS, DAVID BROOKS
INTERNATIONAL, INC., TERRY BROOKS,
ELIZABETH BROOKS INDUSTRIES, INC.,
ANDREW BROOKS INDUSTRIES, INC., JEFFREY
BROOKS, TACTICAL ARMOR PRODUCTS,
LEAD PLAINTIFFS IN THE CLASS ACTION
LITIGATION, WEISER, LLP, Defendants.

No. 15-2940
|
At a stated term of the United States Court
of Appeals for the Second Circuit, held at the
Thurgood Marshall United States Courthouse,
40 Foley Square, in the City of New York, on
the 29 th day of July, two thousand sixteen.
|
July 29, 2016

Appeal from the United States District Court for the
Eastern District of New York (Seybert, *J.*).

**Attorneys and Law Firms**

FOR APPELLANT: GARY D. SESSER (William F.
Sondericker, Leonardo Trivigno, on the brief), Carter
Ledyard & Milburn LLP, New York, NY.

FOR APPELLEE: ALAN J. KORNFELD, Pachulski
Stang Ziehl & Jones LLP, Los Angeles, CA (David P.
Kasakove, Bryan Cave LLP, New York, NY, on the
brief).

PRESENT: RICHARD C. WESLEY, DEBRA ANN
LIVINGSTON, DENNY CHIN, Circuit Judges.

**Opinion**

**\*1 UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED** that the
order of the District Court is **AFFIRMED**.

Intervenor-Appellant D. David Cohen appeals from an
order of the United States District Court for the Eastern
District of New York (Seybert, *J.*), dismissing the action
pursuant to Federal Rule of Civil Procedure 41(a)(2). We
assume the parties' familiarity with the underlying facts
and the procedural history, which we reference only as
necessary to explain our conclusions.

Cohen first argues that the District Court's dismissal of
the action without consideration of his entitlement to
fees contravened this Court's mandate in *Cohen v. Viray*
(*Cohen I*), 622 F.3d 188, 196 (2d Cir. 2010). This argument
is untenable. "The mandate rule compels compliance
on remand with the dictates of the superior court and
forecloses relitigation of issues expressly or impliedly
decided by the appellate court." *United States v. Ben
Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis omitted)
(internal quotation marks omitted). "But the mandate is
controlling only as to matters within its compass. When
the mandate leaves issues open, the lower court may
dispose of the case on grounds not dealt with by the
remanding appellate court." *In re Coudert Bros. LLP*,
809 F.3d 94, 98 (2d Cir. 2015) (internal quotation marks
omitted). The mandate in *Cohen I* expressly declined to
address the merits of the fee issue and left open the
issue for the District Court's consideration. In such cases,
our mandate does not preclude the District Court from
considering or deciding the case on alternate grounds. *See*

**B-47**

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175–76 (2d Cir. 2014).

Second, Cohen argues that the District Court's dismissal is contrary to law. We review dismissals under Rule 41(a)(2) for abuse of discretion. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). In addition to his mandate argument, Cohen presents two bases for error: (1) the District Court misconstrued the settlement agreement, and (2) the dismissal prejudiced Cohen. Neither argument is availing. Cohen has no standing to claim that the agreement was improperly read by the District Court. "A settlement agreement is a contract that is interpreted according to general principles of contract law." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) (internal quotation marks omitted). As a nonparty to the contract, Cohen cannot assert rights on the basis of the contract unless he is a third-party beneficiary, *see Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014), which he is clearly not, *see Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006). Similarly, in the context of a Rule 41(a)(2) dismissal of a claim, prejudice is generally evaluated as to the party against whom the claim is asserted. [1] *See Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011); *Catanzano v. Wing*, 277 F.3d 99, 109–10 (2d Cir. 2001). The claims dismissed here were not against Cohen. Even assuming Rule 41(a)(2) required us to consider prejudice to Cohen, the District Court did not abuse its discretion in concluding that Cohen's opportunity for a fee hearing under Second Circuit precedent in the bankruptcy court —a hearing he ultimately received and in which he prevailed—sufficiently obviated any prejudice resulting from dismissal.

**\*2** We have considered all of Cohen's arguments and find them to be without merit. Accordingly, the order of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

**All Citations**

--- Fed.Appx. ----, 2016 WL 4059543

Footnotes

1     Cohen has not argued that Rule 41(a)(2) was not the proper standard to apply to the dismissal of the action generally, including his fee claim, nor has he argued that his entitlement to attorneys' fees invokes Rule 41(a)(2)'s additional requirement when a defendant has pleaded a counterclaim, *see* Fed. R. Civ. P. 41(a)(2) (permitting such dismissals "only if the counterclaim can remain pending for independent adjudication").

---

**End of Document**                                   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

B-48

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SS Body Armor I, Inc., *et al.*,[1] | ) | Case No. 10-11255 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket Nos. 2865 and 3089** |

**Hearing Date: July 6, 2015 at 11:00 a.m. (prevailing Eastern time)**

**DEBTORS' RESPONSE TO SUPPLEMENTAL STATEMENT OF
D. DAVID COHEN IN RESPONSE TO DEBTORS' LETTER
CONCERNING COURT APPROVAL IN DERIVATIVE ACTION**

The above-captioned debtors (the "Debtors") submit this response to the *Supplemental Statement of D. David Cohen in Response to Debtors' Letter Concerning Court Approval in Derivative Action* [D.I. 3089] (the "Supplemental Cohen Objection"), filed by D. David Cohen ("Cohen") on June 29, 2015 in connection with the *Debtors' Amended Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of Settlement Agreement with Class Plaintiffs, Plaintiffs' Counsel and Derivative Counsel* [D.I. 2865] (the "Motion").[2] In support of this response, the Debtors respectfully state as follows:

1.      Cohen's latest pleading – his third objection to the Motion in this Court – makes clear that, while Cohen has insisted in the past that he is selflessly acting for all the victims of David Brooks' criminal conduct, Cohen's true goal is to advance his own personal financial

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  SS Body Armor I, Inc. (9361); SS Body Armor II, Inc. (4044); SS Body Armor III, Inc. (9051); and PBSS, LLC (8203).  All correspondence and pleadings for the Debtors must be sent to SS Body Armor I, Inc., *et al.*, c/o Pachulski Stang Ziehl & Jones LLP, 919 North Market St., 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

[2]     Capitalized terms not defined herein have the meanings ascribed to such terms in the Motion.

B-49

interests as a creditor of the Debtors' estates. Simply put, Cohen's objections to the Motion are calculated to delay approval of the Settlement Agreement, in the hopes of improving Cohen's position in his claims-related negotiations with the Debtors and the Creditors' Committee, thereby allowing Cohen to extract payment of substantial attorneys' fees from the Debtors in exchange for going away – in other words, withdrawing his opposition to a Settlement Agreement that is supported by the Debtors, the Creditors' Committee, the Equity Committee and the Class Plaintiffs.

2.      By way of background, Cohen and his counsel, Carter Ledyard & Milburn LLP ("CLM"), have filed proofs of claim in the Debtors' bankruptcy cases seeking in excess of $730,000 for legal fees allegedly incurred by Cohen in connection with the prepetition EDNY Stipulation and Cohen's subsequent appeal to the Second Circuit.[3]  As discussed in detail in the EDNY Letter, the allowance or disallowance of those claims is within the exclusive jurisdiction of this Court and, by filing their proofs of claim in the Debtors' bankruptcy cases, Cohen and CLM have consented to this Court's jurisdiction to make a final determination as to their claims. *See, e.g.,* EDNY Letter at pg. 5.

3.      Like all other creditors of the Debtors' estates, Cohen and CLM will have an opportunity to be heard in connection with their claims for Cohen's attorneys' fees, as part of the claims allowance process in this Court.  The Settlement Agreement, however, does not purport to resolve (or even discuss, for that matter) the Cohen/CLM claims, and Cohen has offered no valid justification for his contention that the Cohen/CLM claims must be adjudicated in connection

---

[3]    The claims filed by Cohen and CLM are described in further detail in the Debtors' June 25, 2015 letter to Judge Seybert [EDNY D.I. 261] (the "EDNY Letter").  A copy of the EDNY Letter was attached as Exhibit 4 to the Supplemental Cohen Objection.

with the Settlement Agreement.  Cohen's two main arguments in support of his contention – that the Second Circuit remanded the issue of Cohen's attorneys' fees to the EDNY District Court, and that the standards for awarding fees under Fed. R. Civ. P. 23 differ from those governing the award of fees under the Bankruptcy Code – lack merit for the following reasons:

- The Second Circuit did not remand the issue of Cohen's attorneys' fees to the EDNY District Court.  In its opinion regarding the prepetition EDNY Stipulation, the Second Circuit expressly limited its decision to the issue of whether the SOX § 304 indemnification provisions of the EDNY Stipulation were permissible.  The Second Circuit did not, however, address any issues pertaining to attorneys' fees. *See Cohen v. Viray*, 622 F.3d 188, 196 (2d Cir. 2010) ("**Nor do we reach the issues pertaining to attorneys' fees.**") (emphasis added).  Moreover, there is no indication from the Second Circuit's opinion that the Second Circuit even considered the impact that the filing of the Debtors' bankruptcy cases would have on this Court's jurisdiction over the claims for Cohen's attorneys' fees, or over the Derivative Action claims themselves.

- The possibility that this Court, in adjudicating the Cohen/CLM claims as part of the claims allowance process in the Debtors' bankruptcy cases, might be called upon to apply the Federal Rules of Civil Procedure provides no support for Cohen's contention.  As with any other claim filed against the Debtors, this Court can and will apply the applicable substantive law to the Cohen/CLM claims. Furthermore, the cases and other authority cited by Cohen in the Supplemental Cohen Objection pertain to class actions, and thus have no bearing on the

Cohen/CLM claims for attorneys' fees in connection with the Derivative Action. *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ("Members of the **class** who smell a rat can object to approval of the settlement.") (emphasis added); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) ("Indeed, **class** lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the **class**; and given the role of such interlopers in preventing cozy deals that favor **class** lawyers and defendants at the expense of **class** members, their requests for fees must not be slighted.") (emphasis added); *see also* Fed. R. Civ. P. 23(h) ("In a certified **class** action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.") (emphasis added).

4.     Finally, as discussed in extensive detail in the EDNY Letter, the Debtors intend to file a motion for dismissal with prejudice of the Derivative Action in the EDNY District Court in the event that this Court approves the Settlement Agreement on July 6, 2015. *See* EDNY Letter at pgs. 4-5. This procedure will satisfy the Debtors' obligations under the Settlement Agreement, and will respect this Court's exclusive jurisdiction over the claims asserted in the Derivative Action. As set forth in the EDNY Letter, this Court's ruling in *In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006), *subsequently aff'd,* 359 F. App'x 352 (3d Cir. 2010), establishes that the Derivative Action claims are property of the Debtors' bankruptcy estates, and that this Court now has exclusive jurisdiction over the Derivative Action claims and any settlement of those claims, including any payment of attorneys' fees pursuant to such

B-52

settlement. *See, e.g.*, EDNY Letter at pgs. 2-4.[4]  Section 1 of the Settlement Agreement – which requires, as a condition to the effective date, that the EDNY District Court enter an order approving the Settlement Agreement in the Derivative Action – merely reflects the fact that the Derivative Action itself remains on the docket of the EDNY District Court.  In other words, if this Court approves the Settlement Agreement, something must be done to clear the Derivative Action from the EDNY District Court's docket.  As discussed in the EDNY Letter, that "something" will be the Debtors' contemplated motion for dismissal with prejudice of the Derivative Action.  Nothing in the Settlement Agreement, however, alters – or could alter – the fact that this Court is the only court that has jurisdiction to consider or approve the Debtors' proposed settlement of the Derivative Action claims.

[remainder of page intentionally blank]

---

[4]     Cohen has been aware of the Debtors' position with respect to the Derivative Action since at least 2010.  In May 2010, Cohen sought relief from the automatic stay [D.I. 162] to pursue his appeal from the EDNY District Court's order approving the EDNY Stipulation.  The Debtors opposed Cohen's stay relief motion on the grounds that, among other things, the claims asserted in the Derivative Action are property of the Debtors' bankruptcy estates.  *See* D.I. 215 at pgs. 4, 12-13 (citing *RNI Wind Down* and other cases).  Judge Walsh denied Cohen's stay relief motion [D.I. 614] on September 21, 2010.

5.     For the reasons set forth herein, Cohen has failed to establish any grounds to delay this Court's ruling on the Motion.   Accordingly, the Debtors respectfully request that the Court grant the Motion at the conclusion of the hearing on July 6, 2015.

Dated:  June 30, 2015                    PACHULSKI STANG ZIEHL & JONES LLP

                                         */s/ James E. O'Neill*
                                         Laura Davis Jones (Bar No. 2436)
                                         Alan J. Kornfeld (CA Bar No. 130063)
                                         James E. O'Neill (Bar No. 4042)
                                         Elissa A. Wagner (CA Bar No. 213589)
                                         919 N. Market Street, 17th Floor
                                         P.O. Box 8705
                                         Wilmington, DE  19899-8705 (Courier 19801)
                                         Telephone:  (302) 652-4100
                                         Facsimile:  (302) 652-4400
                                         Email:  ljones@pszjlaw.com
                                                 akornfeld@pszjlaw.com
                                                 joneill@pszjlaw.com
                                                 ewagner@pszjlaw.com

                                         Counsel for Debtors and Debtors in Possession

B-54

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                        .    Case No. 10-11255 (CSS)
                              .
SS BODY ARMOR I, INC.,        .
et al.,                       .    824 North Market Street
                              .    Wilmington, DE 19801
         Debtors.             .
                              .    July 6, 2015
. . . . . . . . . . . . . ..       11:10 a.m.
```

TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Pachulski Stang Ziehl & Jones
                            By:  ALAN J. KORNFELD, ESQ.
                            10100 Santa Monica Blvd., 13th Floor
                            Los Angeles, CA 90067

                            Pachulski Stang Ziehl & Jones
                            By:  LAURA DAVIS JONES, ESQ.
                                 JAMES E. O'NEILL, ESQ.
                            919 North Market Street, 17th Floor
                            Wilmington, DE 19801

                            McKenna Long & Aldridge, LLP
                            By:  GEORGE KOSTOLAMPROS, ESQ.
                            1900 K Street NW
                            Washington, DC 20006

For Lead Plaintiffs:        Lowenstein Sandler LLP
                            By:  MICHAEL S. ETKIN, ESQ.
                                 NICOLE STEFANELLI, ESQ.
                            65 Livingston Avenue
                            Roseland, NJ 07068

Audio Operator:             Leslie Murin

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311   Fax No. (609) 587-3599**   B-55

APPEARANCES (Cont'd):

For Lead Plaintiffs:          Cross & Simon, LLC
                              By:  KEVIN S. MANN, ESQ.
                              1105 North Market Street
                              Suite 901
                              Wilmington, DE  19801

For the Equity               Baker & McKenzie LLP
Committee:                   By:  JOHN E. MITCHELL, ESQ.
                             2300 Trammell Crow Center
                             2001 Ross Avenue
                             Dallas, TX 75201

                             Bifferato, LLC
                             By:  IAN CONNOR BIFFERATO, ESQ.
                             800 N. King Street
                             Wilmington, DE 19801

For the Unsecured            Rosner Law Group
Creditors' Committee:        By:  SCOTT J. LEONHARDT, ESQ.
                             824 N. Market Street, Suite 810
                             Wilmington, DE 19801

                             Arent Fox, LLP
                             By:  ROBERT M. HIRSH, ESQ.
                             1675 Broadway
                             New York, NY 10019

For David Brooks:            Klehr Harrison Harvey Branzburg LLP
                             By:  LINDA RICHENDERFER, ESQ.
                             919 Market Street, Suite 1000
                             Wilmington, DE 19801

For David Cohen:             Carter Ledyard & Milburn, LLP
                             By:  GARY D. SESSER, ESQ.
                                  LEONARDO TRIVIGNO, ESQ.
                             2 Wall Street
                             New York, NY 10005

                             Gellert Scali Busenkell & Brown, LLC
                             By:  MICHAEL BUSENKELL, ESQ.
                             913 N. Market Street, 10th Floor
                             Wilmington, DE 19801

B-56

TELEPHONIC APPEARANCES:

For the U.S. Securities &        U.S. Securities & Exchange
Exchange Commission:               Commission
                                 By:  PATRICIA SCHRAGE

For Loanstar Capital             Akin Gump Strauss Hauer & Feld,
Management, LLC:                    LLP
                                 By:  DAVID SIMONDS, ESQ.
                                 2029 Century Park East
                                 Suite 2400
                                 Los Angeles, CA 90067-3010

                                 Lonestar Capital Management, LLC
                                 By:  VIKAS TANDON

For SS Body and Armor            Pachulski Stang Ziehl & Jones
Point Blank:                     By:  ELISSA A. WAGNER, ESQ.
                                 10100 Santa Monica Blvd.
                                 13th Floor
                                 Los Angeles, CA 90067

For the Debtor:                  CRG Partners Group, LLC
                                 By:  SCOTT AVILA

For David Cohen:                 By:  D. DAVID COHEN, Pro se

                          - - -

B-57

1  here.  Well, there is no promissory note here, but there is a

2  court order.  There's a court order that allows the loan.

3  There's a court order that provides for repayment of the loan

4  and there's a court order that provides for security for

5  repayment of the loan, which is all monies that the company

6  collects.  Up to $40 million must be used to repay the loan at

7  the rate of 50 cents of every dollar and there's a court order

8  that provides that in the event of an appeal then the company

9  can't even pay the 50 cents to itself.  It's got to escrow all

10 the funds that come in.  So basically the Court order, which is

11 a court order of this court and of the Eastern District of New

12 York, provides for the loan amount and the payment terms.

13        Mr. Cohen then argues that, and this is in his very

14 last objection, his third one, that there has to be a motion to

15 dismiss the derivative action, and since we're not filing a

16 motion until this Court makes a determination then our

17 procedure is defective.

18        Well, as we point out in our response filed last week

19 to Mr. Cohen's supplemental objection, this is the Court that

20 has jurisdiction over whether we get to dismiss the derivative

21 action or not.  As this Court wrote at RNI, derivative actions

22 are property of the estate.  That's beyond dispute.  Mr. Cohen

23 knows that the derivative action is property of the estate.  He

24 filed the motion in this court in 2010 to lift the stay to

25 allow him to prosecute the derivative action, which was denied

B-58

1  by this Court.  So no secret, derivative actions are property

2  of the estate.  This Court makes the call about whether the

3  debtor may settle the derivative action pursuant to this

4  settlement agreement, and ultimately because the derivative

5  action is on the docket of the Eastern District of New York,

6  the debtors have to do something to remove that case from the

7  docket.  And what the debtors will do, also to be heard on

8  August 18th, will be to file a motion saying that this Court,

9  as a Court that has jurisdiction over the derivative action,

10 has allowed us to dismiss it.  We move that the Eastern

11 District of New York grant dismissal of the derivative action

12 once this settlement becomes effective.

13        Let me turn to Mr. Sackaroff briefly, and Mr.

14 Sackaroff testified candidly that he worked with Mr. Cohen and

15 really has received all of his information from Mr. Cohen about

16 what is going on in this court and the Eastern District of New

17 York with respect to the settlement.

18        And Mr. Sackaroff, to highlight a couple of points

19 from his testimony and I'll highlight with page references, he

20 has no idea that the Bankruptcy Court approved Point Blank's

21 rejection of the Eastern District stipulation.  That's at Page

22 79 and 80 of his transcript.

23        Mr. Sackaroff believes that Judge Walsh order Point

24 Blank to work out the settlement.  Mr. Sackaroff believes that

25 the debtors' counsel and class' counsel, not the debtors, are

B-59

1          That's not a reason, that's only an explanation,

2     that's not an excuse for why nothing else in out here.  But I

3     would submit, Your Honor, just because nothing else in out

4     there, it's not grounds upon which the Court can approve

5     something that does not meet the standards that have been set

6     out under the rules of the case law.  Thank Your Honor.

7          THE COURT:  Okay.  I expect, given the activities of

8     the last four weeks, it's not particularly easy to get in

9     contact with anybody in incarceration right now, even harder

10    than normal.  And it is always difficult and I remember that

11    from my days in practice.

12         All right.  I'm going to take a very short recess and

13    I'm going to come out and rule.

14                         (Recess)

15         COURTROOM DEPUTY:  All rise.

16         THE COURT:  Please be seated.  Okay.  I am, subject

17    to I guess you'd call it a carve out or two, I am going to

18    approve the settlement motion.  Take a step back and remember

19    what it is that I've been asked to do and what I'm tasked with

20    what I'm doing under the code which is to figure out whether

21    this settlement makes sense for the debtors' estates.

22         There is no question at all that this is a good deal

23    for the debtor.  There is no question at all that it is a good

24    deal for the debtors' creditors as represented by the Unsecured

25    Creditors' Committee and, as modified, that it's a good deal

B-60

1  for the debtors' equity as represented by the Official

2  Committee of Equity Holders.  And I find it highly significant

3  that both committees, class counsel and the debtors, all

4  support the settlement.

5      The objections to the settlement don't go really to

6  its reasonableness as an economic matter.  They go to whether

7  it is legally permissible and they go to really sort of due

8  process type of arguments.  But there's no real argument, nor

9  is there an argument to be made, that this is a bad deal for

10  the debtors' estates.

11      The litigation burn in this case, the litigation risk

12  in this case is highly significant.  The amount of fees that

13  have been incurred and have yet to be paid and the amount of

14  cash that would be needed to confirm a plan is high, it's a lot

15  of money.   I think it's about 16 million approximately.  And

16  the immediate $20 million interest-free, non-recourse loan that

17  the debtors' receiving in order to find its exit from Chapter

18  11 and the allocation formula that has been set up is clearly

19  to the benefit of the debtors' estates and its creditors.

20      A large and important piece of this settlement is the

21  settlement that will be approved by Judge Seybert in the

22  Eastern District of New York in connection of the class action.

23  My job is not to protect the class.  The class action is not

24  before me and I have no jurisdiction over the class action.

25  Issues as to what's appropriate to be approved or not approved

B-61

1    action was not.  And while the settlement can go effective that

2    does not mean it has been terminated.  The rejection's not been

3    terminated, as well, and the effect of the Second Circuit's

4    decision was not a termination of the appeal, excuse me, of the

5    settlement.  So again, even if there were a claim that Brook's

6    would have for return of the race in the event that the

7    settlement was terminated, that hasn't happened.  So, again, so

8    there's not a current right to those payment -- to payment that

9    exists.

10          In addition, I think it is significant that Mr.

11   Brooks is getting what Mr. Brooks was going to get under the

12   original settlement agreement which is dismissed with prejudice

13   from the claims that he was otherwise -- or at least from some

14   actions that he was otherwise getting released under the

15   original settlement.  As a result, he has no rejection damage

16   claim of any significance.  But in any event, it's not affected

17   by the settlement.

18          The appeal is -- and whether that's moot and whether

19   Judge Robinson should dismiss or not dismiss that is a question

20   for her.

21          With regard to the $1.5 million claim to Lowenstein,

22   I don't believe in this circumstance the Court need go through

23   a substantial contribution analysis.  But were I to do that I

24   believe that the evidence in front of the Court certainly would

25   support a finding here of substantial contribution of this

B-62

1  estate.   That's a facts and -- totality of facts and

2  circumstances test.   It's certainly a high bar and not to be

3  taken lightly, but there's no question that Lowenstein's

4  actions on behalf of the class over the last several years in

5  crafting a settlement that is so advantageous to the estate has

6  provided some value there.

7         Whether Mr. Cohen should be his lawyers paid or

8  himself paid I'll address in just a few minutes.

9         With regard to some of Mr. Cohen's arguments, should

10 the -- should this Court await the Eastern District of New

11 York, I addressed this in argument, somebody's got to go first.

12 Both of us have to reach a decision approving this and the plan

13 has to be affirmed for it to go effective and there's certainly

14 no reason this Court should wait for the Eastern District of

15 New York to act first.   It's just not true that the debtors are

16 becoming the legal representatives of the victims.   It's just

17 not true that class action plaintiffs are -- excuse me, counsel

18 is making the argument that they somehow represent the victims.

19 Now, there are victims who are class members, but that doesn't

20 mean that class counsel is, in some way, representing all

21 victims.   Having said that, I think it's fair to say that class

22 counsel negotiated in effect on behalf of all the victims in --

23 and as Mr. Etkin put it, that's nothing but upside for those

24 victims.

25         This idea that the Court shouldn't approve the

1  settlement because it's too good a deal for the debtors, (a) I

2  think ignores significant litigation risk that is at the feet

3  of the class, but (2) that's kind of an odd argument to make to

4  the watchdog for whether the estate's getting enough money or

5  not, you know.  I'm all for settlements that are too rich for

6  the debtors' estate.  But I don't believe that's one, I believe

7  it's an appropriate balance.

8         I don't think I need to address every individual

9  argument made, just touching on a few here that I think are

10 significant.  But I'm overruling the objection in its entirety,

11 both objections in their entirety, except for what I'm going to

12 say in just a few moments.  This idea there's no promissory

13 note, there's no security, there's certainly not a security

14 interest, but there's a clear allocation method and the first

15 funds that come in are split 50/50, et cetera, there's a

16 mechanism to pay back the loan.

17        As to the promissory note, you got one better.  You

18 got a bunch of court orders and it doesn't get any better than

19 that.  And I approve DIP financing agreements, I mean, there's

20 always an underlying security agreement, et cetera, but this

21 Court's orders govern billions of dollars of loans every year

22 and, although there have been complaints about many things, the

23 unenforceability of a DIP order is not one I've heard.  And I

24 don't think that the fact there's not a promissory note here is

25 significant.

B-64

### C E R T I F I C A T I O N

We, WENDY ANTOSIEWICZ, CEIL ASHBOCK, COLETTE MEHESKI, ANNEMARIE DeANGELO and AMY L. RENTNER, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.


/s/ Wendy Antosiewicz

WENDY ANTOSIEWICZ


/s/ Ceil Ashbock

CEIL ASHBOCK


/s/ Colette Meheski

COLETTE MEHESKI


/s/ Annemarie DeAngelo

ANNEMARIE DeANGELO


/s/ Amy L. Rentner

AMY L. RENTNER

J&J COURT TRANSCRIBERS, INC.   DATE:  July 8, 2015

B-65

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Case No. 10-11255 (CSS) |
| | . | |
| SS BODY ARMOR I, INC., | . | |
| et al., | . | 824 North Market Street |
| | . | Wilmington, DE 19801 |
| Debtors. | . | |
| | . | November 10, 2015 |
| . . . . . . . . . . . . .. | | 9:36 a.m. |

TRANSCRIPT OF CONFIRMATION HEARING
BEFORE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:                Pachulski Stang Ziehl & Jones
                                By:  ALAN J. KORNFELD, ESQ.
                                10100 Santa Monica Blvd., 13th Floor
                                Los Angeles, CA 90067

                                Pachulski Stang Ziehl & Jones
                                By:  LAURA DAVIS JONES, ESQ.
                                     JAMES E. O'NEILL, ESQ.
                                919 North Market Street, 17th Floor
                                Wilmington, DE 19801

                                Pachulski Stang Ziehl & Jones
                                By:  DAVID M. BERTENTHAL, ESQ.
                                150 California Street, 15th Floor
                                San Francisco, CA 94111

For Lead Plaintiffs:            Lowenstein Sandler LLP
                                By:  MICHAEL S. ETKIN, ESQ.
                                65 Livingston Avenue
                                Roseland, NJ 07068

Audio Operator:                 Leslie Murin

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**
**(609) 586-2311   Fax No. (609) 587-3599**

B-66

2

APPEARANCES (Cont'd):

For Lead Plaintiffs:          Cross & Simon, LLC
                              By:  KEVIN S. MANN, ESQ.
                              1105 North Market Street
                              Suite 901
                              Wilmington, DE  19801

For the Equity                Baker & McKenzie LLP
Committee:                    By:  JOHN E. MITCHELL, ESQ.
                                   DAVID W. PARHAM, ESQ.
                              2300 Trammell Crow Center
                              2001 Ross Avenue
                              Dallas, TX 75201

                              Bifferato, LLC
                              By:  TOM DRISCOLL, ESQ.
                              800 N. King Street
                              Wilmington, DE 19801

For the Unsecured             Rosner Law Group
Creditors' Committee:         By:  SCOTT J. LEONHARDT, ESQ.
                              824 N. Market Street, Suite 810
                              Wilmington, DE 19801

                              Arent Fox, LLP
                              By:  ROBERT M. HIRSH, ESQ.
                                   BETH BROWNSTEIN, ESQ.
                              1675 Broadway
                              New York, NY 10019

For Terry Brooks:             Saul Ewing, LLP
                              By:  MARK MINUTI, ESQ.
                              222 Delaware Avenue
                              Wilmington, DE 19899

For Jeffrey Brooks:           Loizides, PA
                              By:  CHRIS LOIZIDES, ESQ.
                              1225 N. King St., #800
                              Wilmington, DE 19801

For David Cohen:              Gellert Scali Busenkell & Brown, LLC
                              By:  MICHAEL BUSENKELL, ESQ.
                              913 N. Market Street, 10th Floor
                              Wilmington, DE 19801

```
APPEARANCES (Cont'd):

For David Cohen:          Carter Ledyard & Milburn, LLP
                          By:  GARY D. SESSER, ESQ.
                               LEONARDO TRIVIGNO, ESQ.
                          2 Wall Street
                          New York, NY 10005

For Steel Partners:       Womble Carlyle Sandridge & Rice, LLP
                          By:  MORGAN PATTERSON, ESQ.
                          222 Delaware Avenue, #1501
                          Wilmington, DE 19801

For CarVal Investors,     Pepper Hamilton, LLP
LLC:                      By:  DAVID M. FOURNIER, ESQ.
                               DOUGLAS D. HERRMANN, ESQ.
                          Hercules Plaza, Suite 5100
                          1313 Market Street
                          P.O. Box 1709
                          Wilmington, DE 19899-1709

TELEPHONIC APPEARANCES:

For Steel Partners:       Riemer & Braunstein, LLP
                          By:  PAUL S. SAMSON, ESQ.
                          Three Center Plaza, 6th Floor
                          Boston, MA 02108

For Argo Partners:        Argo Partners
                          By:  MATTHEW A. GOLD, ESQ.
                          12 West 37th Street #9
                          New York, NY 10018

For Deutsche Bank         Willkie Farr & Gallagher, LLP
Trust Company:            By:  ANA ALFONSO, ESQ.
                          787 Seventh Avenue
                          New York, NY 10019-6099

                          Richards Layton & Finger, PA
                          By:  JOHN H. KNIGHT, ESQ.
                          920 North King Street
                          Wilmington, DE 19801

For the U.S. Trustee:     Office of the United States Trustee
                          By:  DAVID L. BUCHBINDER, ESQ.
                          844 King Street
                          Wilmington, DE 19801
```

1  pursuit of his own narrow interest by any means.  And, again,

2  this settlement wouldn't exist, but for his appeal.

3       Finally, you know, we have made an objection to the

4  fees of derivative counsel, which in some sense is the flip

5  side of our fee application.  They were awarded $300,000 and

6  just to be clear, we're not saying that $300,000 is too much.

7  I mean in some ways it's suspiciously low.  They claim that

8  they put in $600,000 worth of time and they have a fee claim of

9  $300,000 and you have to ask why, given the apparent merit of

10 the derivative action and I think the question really answers

11 itself, which is that they were there to work hand in hand with

12 class counsel and create, you know, a fund, which they did

13 create, but they created it by giving an illegal

14 indemnification to Mr. Brooks, which are you know, cost the

15 company $186 million back that, and so we don't see a rationale

16 for compensating derivative counsel under those circumstances.

17 As I said, it's kind of the flip side of, you know, Mr. Cohen's

18 fee application.  Mr. Cohen, of course having preserved $186

19 million claim and vindicating public policy.

20      I spoke to -- I don't know -- we had submitted

21 affidavits.  I can move those into evidence.  I spoke to Mr.

22 Kornfeld last week.  He has no objection to our exhibits.  We

23 have no objection to his.  We agreed we don't need witnesses or

24 that sort of thing, so if the Court would like, I could move

25 those into evidence.

### C E R T I F I C A T I O N

We, KIMBERLY UPSHUR, COLETTE MEHESKI, MARY POLITO, ANNEMARIE DeANGELO and TAMMY DeRISI, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.


/s/ Kimberly Upshur

KIMBERLY UPSHUR


/s/ Colette Meheski

COLETTE MEHESKI


/s/ Mary Polito

MARY POLITO


/s/ Annemarie DeAngelo

ANNEMARIE DeANGELO


/s/ Tammy DeRisi

TAMMY DeRISI

J&J COURT TRANSCRIBERS, INC.     DATE:  November 16, 2015

B-70